UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


SOUTH FIFTH TOWERS, LLC,                                             PLAINTIFF


v.                                          CIVIL ACTION NO. 3:15-CV-00151-CRS


ASPEN INSURANCE UK, LTD and                               DEFENDANTS
TENCO SERVICES, INC.

**<u>MEMORANDUM OPINION</u>**

I.      <u>Introduction</u>

The plaintiff, South Fifth Towers, LLC ("South Fifth"), owns a residential apartment

building in downtown Louisville.  South Fifth alleges that in June 2013, the property "sustained

substantial water damage during extremely heavy rainfall in Louisville Kentucky."  Compl. ¶ 6,

ECF No. 21-4.  South Fifth sued its commercial insurance provider, Aspen Insurance UK, Ltd.

("Aspen") and an outside adjuster, Tenco Services, Inc. ("Tenco") (together, the "Defendants"),

for breach of contract and bad faith, among other claims.

The Defendants move this Court for leave to amend the answer, Defs.' Mot. Am.

Answer, ECF No. 20, to which South Fifth objects.  Pl.'s Obj. & Resp. 1, ECF No. 24.  South

Fifth moves for leave to amend the complaint, Pl.'s Mot. Am. Compl. 1, ECF No. 21, which the

Defendants oppose.  Defs.' Resp. Opp. Pl.'s Mot. Am. Compl. 1, ECF No. 23.

For the reasons below, the Court will grant the Defendants' motion for leave to file an

amended answer.  The Court will deny South Fifth's motion for leave to amend its complaint.

II.      <u>The Defendants' Motion for Leave to Amend the Answer</u>

1

The Defendants move for leave to amend the answer on the grounds that "discovery and continued fact development and investigation in this matter have disclosed additionally potentially applicable defenses." Defs.' Mot. Am. Answer 1.

Under Rule 15(a)(2), a party may amend a pleading only if the Court grants leave to amend or if the opposing party consents. This Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). An answer must "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

Affirmative defenses must give fair notice of the nature of the defense. *See Montgomery v. Wyeth*, 580 F.3d 455, 467 (6th Cir. 2009). In *Montgomery*, the court of appeals affirmed the district court's finding that the defendants had not waived the statute of repose defense because the answer said, "Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations and repose." *Id.* The court of appeals explained:

> The Federal Rules of Civil Procedure do not require a heightened pleading standard for a statute of repose defense. Rule 8(b)(1) provides generally that '[i]n responding to a pleading, a party must ... state in short and plain terms its defenses to each claim.' Rule 8(d)(1) requires that averments in pleadings be 'simple, concise, and direct,' and that '[n]o technical form is required.' Fed. R. Civ. P. 8(d)(1).

*Id.* at 468; *see also*, *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 546 – 47 (6th Cir. 2012) (holding that the defendant's allegation in the answer that plaintiff's "claims are barred by the doctrines of res judicata, collateral estoppel, detrimental reliance, waiver, and estoppel" put the plaintiff on notice of those defenses such that the defendant did not waive its preclusion defense); *and*, *Davis v. Sun Oil Co.*, 148 F.3d 606, 612 (6th Cir. 1998) (holding that defendant gave fair notice of defense with statement in answer of "Plaintiffs claims are barred by the doctrine of res judicata.").

2

South Fifth argues that affirmative defenses must meet a heightened standard of sufficiency under *Twombly* and *Iqbal.*  Pl.'s Obj. & Resp. 2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  Although some district courts have applied heightened standards to affirmative defenses based on *Twombly* and *Iqbal*'s reasoning, *see, e.g.*, *Bradshaw v. Hilco Receivables, LLC*, 725 F.Supp. 2d 532, 534 (D. Md. 2010), the Sixth Circuit has not decided whether *Twombly* and *Iqbal* require a defendant to plead an affirmative defense under a heightened standard.  Courts in this district have applied the "fair notice" standard.  *See Holley Performance Products, Inc. v. Quick Fuel Tech., Inc.*, 2011 WL 3159177 (W.D. Ky. Jul. 26, 2011); *Paducah River Painting, Inc. v. McNational Inc.*, 2011 WL 5525938 (W.D. Ky. Nov. 14, 2011).

Here, the proposed amended answer adds two affirmative defenses: the Thirteenth Defense and the Fourteenth Defense.  The Fourteenth Defense asserts an affirmative defense based on the insurance policy.  It says: "Defendants plead all applicable provisions of the policy of insurance issued by the Defendant Aspen to the Plaintiff as the evidence and proof may warrant."  Proposed Am. Answer 1, ECF No. 20-1.  The Fourteenth Defense is "simple, concise, and direct." *See* Fed. R. Civ. P. 8(d)(1).  The Court finds that the Fourteenth Defense gives fair notice of the nature of the defense.

Additionally, South Fifth argues that the Court should deny leave to amend the answer because the Thirteenth Defense[1] is "untimely" as the "Defendants have had more

---

[1] The Thirteenth Defense asserts that the insurance policy does not cover loss or damage "caused by or resulting from rain ...  unless 1) the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain ... enters; or 2) the loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure." Proposed Am. Answer 1.

than two years since the loss to investigate the facts that form the basis of any affirmative defense asserted by it in this matter."  Pl.'s Obj. & Resp. 3.

Property manager Kevin Landrum appeared for examination under oath on June 3, 2015.  Defs.' Reply Supp. Mot. Am. Answer 4, ECF No. 25.  According to the Defendants, "the proposed additional defenses are timely reactions to South Fifth's first-time explanation as to the cause and nature of the supposed damage for which it seeks coverage under the insurance policy."  *Id.* at 2.  Less than a month after examining Landrum, the Defendants moved for leave to amend to add the Thirteenth Defense.  The Court finds that the Thirteenth Defense is timely.

The Court will grant the Defendants' motion to amend the answer.

III.     South Fifth's Motion to Amend the Complaint

South Fifth moves this Court for leave to amend the complaint.  Mot. Am Compl., ECF No. 21.  South Fifth seeks to add the following defendants to this case: Judah Perlstein, H. Perlstein Insurance Agency, Inc., and Hershel Perlstein Insurance (the "Perlstein Defendants").  Proposed Am. Compl. 1, ECF No. 21-3.  The proposed amended complaint adds claims against the Perlstein Defendants for negligence, indemnification, breach of fiduciary duty, and vicarious liability.  *Id.* at 4 – 7.  It says this Court has diversity jurisdiction under 28 U.S.C. § 1332.  *Id.* ¶ 7.

This Court "should freely grant leave to amend when justice so requires."  Fed. R. Civ. P. 15(a)(2).  *See* discussion *supra* Part II.  Whether to grant leave to amend lies within this Court's discretion.  *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999).

The removal statute says, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).

If the Court determines that adding a defendant will destroy diversity jurisdiction, then the court considers whether the proposed amendment has the improper purpose of destroying diversity jurisdiction.  *Davis v. Owners Ins. Co.*, 29 F.Supp. 2d 938, 943 (E.D. Ky. 2014).  In deciding whether the plaintiff had an improper purpose of destroying diversity jurisdiction, the Court considers: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in seeking amendment; (3) whether the plaintiff will be significantly prejudiced if the amendment is not allowed; and (4) any other equitable factors."  *Id.*; *Barnett v. MV Transp., Inc.*, 2014 WL 1831151 (W.D. Ky. 2014).

A.  <u>Whether adding the Perlstein Defendants would destroy diversity jurisdiction.</u>

The Court must address whether adding the Perlstein Defendants would destroy diversity jurisdiction.  Answering that question is more difficult than it should be.  South Fifth says, "South Fifth itself is a citizen of Florida, or of New York and/or Florida by virtue of the citizenship of its two members."  Pl.'s Reply Supp. Mot. Am. Compl. 21, ECF No. 26.  Given the plaintiff's apparent identity crisis and its transparent attempt to destroy the Court's diversity jurisdiction, the Court will conclude that adding the Perlstein Defendants would destroy complete diversity.

The Defendants' notice of removal said that South Fifth is a New York citizen as its two members, Eric Sternberg and Aaron Parnes, are New York citizens.  Notice of Removal 2, ECF No. 1 (citing *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). The notice of removal also said that Aspen Insurance is a citizen of the United Kingdom where it is

5

incorporated, and Tenco is a citizen of the state of Tennessee where it is incorporated.  *Id.* (citing 28 U.S.C. § 1332(c)(1)).  South Fifth does not dispute that diversity jurisdiction existed at the time of removal.  Pl.'s Reply. 6.

The proposed amended complaint says, "This Court has diversity jurisdiction under the provisions of 28 U.S.C. § 1332."  Proposed Am. Compl. ¶ 7.  The complaint identifies Mr. Perlstein as "an individual resident of the state of New York," *id.* ¶ 2, H. Perlstein Insurance Agency, Inc. as a "New York limited liability company," *id.* ¶ 3, and Perlstein Insurance as a "New York company." *Id.*  ¶ 4.

The Defendants responded that the complaint did not adequately allege the citizenship of the Perlstein Defendants, and "South Fifth should not be provided the opportunity to attempt to make such jurisdictional allegations since, it appears, doing so would destroy this Court's diversity jurisdiction and prejudice Aspen and Tenco by subverting their interest in a federal forum for the claims asserted against them."  Defs.' Resp. Opp. Mot. Am. Compl. 9 – 10, ECF No. 23.

Instead of clarifying whether the amendment would affect the court's diversity jurisdiction, South Fifth replies, "In actuality at the time of removal, Mr. Sternberg was (and still is) a citizen of Florida.  Likewise, Mr. Parnes had (and still has) significant contacts with Florida, including owning a personal residence there."  Pl.'s Reply 6.  South Fifth complicates the question further:

> The final factor concerns the ability of this Court to exercise subject matter jurisdiction over this case if Perlstein is joined as a party.  Upon information and belief, Perlstein is a citizen of New York.  As noted above, South Fifth has two Members, Mr. Sternberg and Mr. Parnes.  Mr. Sternberg is a citizen of Florida. South Fifth's other Member, Mr. Parnes, has connections to New York, but also has substantial ties to Florida where he owns a personal residence.  Should the Court ultimately determine that Mr. Parnes is a citizen of Florida, the Court would have complete diversity among the parties, and it may continue to exercise subject

6

matter jurisdiction.  If however, the Court determines that Mr. Parnes is a citizen of New York, the Court could remand the case to state court under 28 U.S.C. § 1447(e).

*Id.* at 16.  South Fifth makes no citation to support these confusing assertions, and it did not attach any evidence in support of its reply from which the Court could ascertain either Parnes' or Sternberg's citizenship.  The Defendants point out that Parnes provided a New York address in his examination under oath, and Parnes testified that Sternberg lived in Lawrence, New York. Defs.' Sur-Reply Opp. Mot. Am. Compl. 8 – 9, ECF No. 29-1.

The Court strains to see how it is supposed to determine that *both* Parnes and Sternberg are Florida citizens without any evidence from South Fifth.  Indeed, the Defendants offer evidence that both Sternberg and Parnes are New York citizens.  The Defendants also point out that diversity jurisdiction will divest upon the addition of the Perlstein Defendants if just one of South Fifth's two members are New York citizens.  Defs.' Sur-Reply 8.  The Court also strains to see how South Fifth's confusing assertions regarding Parnes' and Sternberg's citizenship can be squared with the proposed amended complaint that says this Court has diversity jurisdiction under 28 U.S.C. § 1332.  The Court can only conclude that South Fifth is being opaque because South Fifth knows that at least one of Parnes and Sternberg, *if not both*, are New York citizens, and South Fifth knows that adding the Perlstein Defendants would destroy diversity jurisdiction.

Thus, given the evidence that Sternberg and Parnes are New York citizens, the Court finds that Sternberg and Parnes are both New York citizens.  If the Court grants South Fifth leave to amend the complaint, adding the Perlstein Defendants would destroy diversity of citizenship. *See* 28 U.S.C. § 1441(e).

B.  The extent to which the purpose of the amendment is to defeat federal jurisdiction.

7

Whether the plaintiff's purpose in amending is to defeat federal jurisdiction is the factor of "paramount importance" to the Court. *Allen v. Outback Steakhouse of Florida, LLC*, 2014 WL 2766109 *1, *1 (W.D. Ky. 2014).

South Fifth asserts that it "seeks leave of court to amend its complaint to add Perlstein to this case **only** because the Defendants have raised the possibility that they were prejudiced by Perlstein's giving of alleged late notice of the loss or damage, and now assert that Perlstein is not their agent for the purpose of giving such notice." Pl.'s Reply 17 – 18 (emphasis in original). "South Fifth did not object to the removal and still does not object to this matter being litigated in federal court should jurisdiction be proper." *Id.* at 18. South Fifth did not seek to add a nondiverse defendant at the same time it responded to a motion to dismiss and moved to remand. *See Telecom Decision Makers, Inc. v. Birch Commc'ns., Inc.*, 2015 WL 5722817 *1, *3 (W.D. Ky. Sept. 29, 2015); *Davis*, 29 F.Supp. 3d at 943.

The Defendants argue:

> South Fifth's refusal to provide a coherent statement as to whether this Court will or will not retain subject matter jurisdiction if it grants the requested amendment only further supports the conclusion that South Fifth seeks to obtain a diversity-destroying amendment through subterfuge as to the real facts, only to then be able to obtain a remand to state court, subverting Defendants' substantial interest in a federal forum.

Defs.' Sur-Reply 9.  The Court agrees with the Defendants.

The Court finds that this factor weighs strongly against granting South Fifth leave to amend.

C. <u>Whether South Fifth has been dilatory in seeking the amendment.</u>

The Defendants' original answer set forth an affirmative defense that South Fifth failed to provide prompt notice of its loss.  Answer 3, ECF No. 4.

South Fifth says that it "learned in early June the factual basis for this affirmative defense and has received certain documents bearing on this question of prompt notice within just the past several days pursuant to a *subpoena duces tecum* served upon Mr. Judah Perlstein in April of this year."  Pl.'s Mem. Supp. Mot. Am. Compl. 2 – 3, ECF No. 21-1.

The Defendants argue that South Fifth has been dilatory: "As noted above, South Fifth had been aware long before it filed the Complaint in this action that Aspen had received late notice of South Fifth's claim, and yet South Fifth waited until the deadline to amend pleadings or add parties to seek to add Perlstein to this action."  Defs.' Resp. 11.

Although South Fifth may have waited until the deadline to amend pleadings, it met that deadline.  Additionally, South Fifth filed its motion on July 3, 2015, within weeks after receiving Landrum's Examination under oath on June 12.

The Court finds that this factor weighs in favor of granting South Fifth leave to amend.

D.  <u>Whether South Fifth will be significantly prejudiced if the amendment is not allowed.</u>

South Fifth argues that the risk of prejudice is "certain and substantial" if the Court does not grant leave to amend because "the risk of inconsistent determinations by two triers of fact relative to the notice issue can only be remedied if the question of the timing and adequacy of Perlstein's notice of the pertinent claim be adjudicated by a single trier of fact." Pl.'s Reply 13. South Fifth argues that Rule 19 requires joinder of the Perlstein Defendants as necessary parties.[2]

---

[2] South Fifth first raises the argument that the Perelstein parties are necessary parties that must be joined under Rule 19 in its reply brief.  The court of appeals has said that it is improper to raise an issue for the first time in a reply as it prevents the nonmoving party from from having a fair opportunity to respond.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

Here, however, the Court granted the Defendants leave to file a sur-reply.  As the Defendants were able to fully respond to South Fifth's necessary party argument, the concern for fairness to the non-moving party that arises when a party presents a new argument for the first time in a reply does not apply.

Rule 19 provides:

(a)      **Persons Required to Be Joined if Feasible**.
  ***(1) Required Party***.  A person who is subject to service of process and *whose joinder will not deprive the court of subject-matter jurisdiction* must be joined as a party if:
  (A) in that person's absence, the court cannot accord complete relief among existing parties; or
  (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
  (i)  as a practical matter impair or impede the person's ability to protect the interest; or
  (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a) (emphasis added).

The Court fails to see how the Perlstein Defendants can be considered necessary parties under Rule 19.  First, as demonstrated above in Part III(A), joining the Perlstein Defendants contradicts Rule 19's explicit criteria that the party's "joinder will not deprive the court of subject-matter jurisdiction."  Fed. R. Civ. P. 19(a).

Second, South Fifth says it fears the "inconsistent determinations by two triers of fact" if it has to pursue claims against the Perlstein Defendants in a separate action.  Pl.'s Reply 14.  Inconsistent results are not the same as inconsistent obligations.  *See Daudert v. State Farm Fire & Cas. Co.*, 2007 WL 1005974 (E.D. Mich. 2007) (citing *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.  Inconsistent adjudications or results, by contract, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.")

Third, the Court finds no prejudice to South Fifth if the Perlstein parties are not joined.  South Fifth, the *plaintiff*, has made no showing that it could incur *any* obligation, much less risk

"incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a).  That

South Fifth could likely obtain full recovery without joining the Perlstein Defendants shows that

South Fifth would not suffer substantial prejudice if the Court denied joinder and "suggests that

the true purpose of the joinder was to destroy federal jurisdiction." *See Allen*, 2014 WL 2766109

at *2.

Fourth, South Fifth's proposed claims against the Perlstein Defendants relate to Mr.

Perlstein's alleged failure to notify Aspen of its loss.  As South Fifth acknowledges, "the claims

in the Amended Complaint do not pertain directly to the existing Defendants."  Pl.'s Mem. 3.

The Court finds that this factor weighs strongly against granting South Fifth leave to

amend.

E.  <u>Other equitable factors.</u>

Generally, an out-of-state defendant has a substantial interest in proceeding in a federal

forum.  *See Cooper v. Thames Healthcare Group, LLC*, 2014 WL 941925 (E.D. Ky. 2014);

*Bridgepoint Condominiums, Inc. v Integra Bank Nat. Ass'n*, 2009 WL 700056 (W.D. Ky. 2009).

Another equitable consideration is whether the proposed defendant should be haled into court to

respond to the complaint.  *See Barnett*, 2014 WL 1831151 at *4.

Here, Aspen is a citizen of the United Kingdom, and Tenco is a citizen of Tennessee.

Both Aspen and Tenco are out-of-state defendants who have a substantial interest in litigating in

this Court.  Additionally, although South Fifth is a New York citizen, "it does own and operate a

large and well-known apartment building located in downtown Louisville."  Defs.' Resp. 11.

The Perlstein Defendants should not be haled into this Court as they are not necessary parties,

and South Fifth's proposed claims against the Perlstein Defendants "do not pertain directly to the

existing Defendants."  *See* discussion *supra* Part III(D).  Further, it appears that South Fifth made

11

murky arguments regarding its own citizenship in an effort to hide its true motive in moving to amend: to obtain remand.

The Court finds that this factor weighs strongly against granting South Fifth leave to amend.

Altogether, the 1447(e) factors weigh heavily against granting South Fifth leave to amend its complaint.  The Court will exercise its discretion and deny leave to amend.  *See* 28 U.S.C. § 1447(e).

IV.   <u>Conclusion</u>

The Court will grant the Defendants' motion for leave to amend the answer.  The Court will deny South Fifth's motion for leave to amend its complaint.

The Court will enter an order in accordance with this opinion.

November 24, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**