UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SOUTH FIFTH TOWERS, LLC                                                                        PLAINTIFF

v.                                                                      CIVIL ACTION NO. 3:15-CV-00151-CRS

ASPEN INSURANCE UK, LTD and                                                                    DEFENDANTS
TENCO SERVICES, INC.

**MEMORANDUM OPINION**

I.   Introduction

The plaintiff, South Fifth Towers, LLC ("South Fifth"), owns a residential apartment building in downtown Louisville called Kentucky Towers. South Fifth alleges that in June 2013, Kentucky Towers "sustained substantial water damage during extremely heavy rainfall in Louisville Kentucky." Compl. ¶ 6, ECF No. 21-4. South Fifth sued its commercial insurance provider, Aspen Insurance UK, Ltd. ("Aspen") and an outside adjuster, Tenco Services, Inc., for breach of contract, among other claims.

Aspen moves this Court for leave to file a counterclaim after the deadline. Def.'s Mot. 1, ECF No. 39. Aspen seeks to allege a cause of action against South Fifth for "Rescission and/or Declaration of Rights." Proposed Countercl. 4 – 5, ECF No. 39-2. In short, the proposed counterclaim alleges that Aspen may rescind its insurance policy with South Fifth because South Fifth made material misrepresentations in its insurance application. *See id.*

For the reasons below, the Court will grant Aspen's motion to modify the scheduling order and for leave to file a counterclaim.

II.  Modification of Rule 16 scheduling order

1

A. Good cause for modifying scheduling order

The Court may modify a scheduling order "only for good cause." Fed. R. Civ. P. 16(b)(4). When a party moves for leave to amend after the deadline, the party "first must show good cause under Rule 16(b) for failure to earlier to seek leave to amend *before* a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (emphasis added). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). Additionally, the Court must also determine potential prejudice to the nonmoving party in determining whether to amend a scheduling order. *Leary*, 349 F.3d at 909.

B. Whether Aspen has shown good cause for modifying scheduling order

Here, the magistrate judge ordered that the parties move for amendment of pleadings "**no later than July 3, 2015**." Order 2, ECF No. 17. On October 26, 2015, Aspen filed its motion for leave to file a counterclaim. Def.'s Mot. 1. After the deadline, Aspen must show good cause under Rule 16(b) for failing to seek leave to amend earlier. *See Leary*, 349 F.3d at 909.

Aspen argues that good cause exists for the Court to modify the scheduling order. Def.'s Mem. 7, ECF No. 39-1. Aspen argues that it only learned of the factual basis for the proposed counterclaim recently when it received subpoena responses from Hershel Perlstein Insurance, GLN Worldwide, Ltd., and Risk Placement Services, Inc. in this litigation. Def.'s Mot. 1.

South Fifth makes no argument regarding whether good cause exists to modify the scheduling order under Rule 16(b). *See* Pl.'s Resp. Opp. 11 – 16, ECF No. 47. Instead, South Fifth relies on futility and undue prejudice as grounds for denying the amendment under Rule 15(a). *Id.* at 13 – 16; *see* discussion *infra* Parts II(C) & III.

Aspen argues that it first learned of the factual basis for its proposed counterclaim when Hershel Perlstein Insurance responded to its subpoena on July 15, 2015. Def.'s Mem. 4. In the subpoena response, Hershel Perstein Insurance produced a notice of non-renewal from Travelers Insurance to South Fifth dated February 25, 2013, citing "UNCOOPERATIVE WITH LOSS CONTROL" as the reason Travelers would not renew its coverage. Notice of Non-Renewal 1, ECF No. 39-5. South Fifth acknowledges that Hershel Perlstein Insurance did not produce its subpoena responses "until on or about June 17, 2015, and [Hershel Perlstein Insurance] continued to provide responses piecemeal through the end of July 2015." Pl.'s Resp. 8.

Aspen then argues it was diligent in investigating this lead by issuing subpoenas to GLN Worldwide and Risk Placement Services. Def.'s Mem. 4. GLN Worldwide and Risk Replacement Services provided documents in response to those subpoenas on August 18, 2015 and October 1, 2015, respectively. *Id.* According to Aspen, the subpoena responses "confirmed that there were no other reasons for Travelers' non-renewal." *Id.*

Hershel Perlstein Insurance did not provide the notice of non-renewal until July 15, after the July 3 deadline for amending pleadings. On October 26, Aspen moved for leave to file a counterclaim within a month of receiving the subpoena response from Risk Replacement Services on October 1. Further, South Fifth makes no argument that Aspen has not been diligent in meeting the case-management order's requirements. These factors support a finding that Aspen has been diligent in attempting to meet the case-management order's requirements. *See Inge*, 281 F.3d at 625. As Aspen's diligence is the "primary measure" for a showing of good cause under Rule 16(b), *see id.*, the Court finds good cause for modifying the scheduling order.

  C. <u>Whether modifying the scheduling order will unduly prejudice South Fifth</u>

Next, the Court determines whether modifying the scheduling order will unduly prejudice South Fifth, the nonmoving party. *See Leary*, 349 F.3d at 909.

The Court may deny leave to amend based on undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 – 59 (6th Cir. 2001). Generally, delay alone should not bar amendment, unless the amendment would prejudice the other party. *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). The court of appeals has found no abuse of discretion in denying leave to amend based on a finding of prejudice when both the discovery deadline and dispositive motion deadline had passed. *Wade*, 259 F.3d at 459; *Duggins*, 195 F.3d at 834.

South Fifth argues that the counterclaim would cause undue prejudice. Pl.'s Resp. 16. South Fifth argues, "Permitting the counterclaim would create a certain and significant risk to South Fifth, absent joinder of Perlstein, of parallel proceedings, duplicative discovery, and inconsistent judgments." Pl.'s Resp. 16.[1] Inconsistent results are not the same as inconsistent obligations. *See Daubert v. State Farm Fire & Cas., Co.*, 2007 WL 1005974 *1, *3 (E.D. Mich. 2007) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.") (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)).

---

[1] After South Fifth filed this response, the Court denied South Fifth leave to amend the complaint. *See* Order, ECF No. 51. The Court found no prejudice to South Fifth in denying joinder of Judah Perlstein, H. Perlstein Insurance Agency, Inc., and Hershel Perlstein Insurance. *See* Mem. Op. 10, ECF No. 50.

4

Aspen concedes that additional discovery will be required. *See* Def.'s Reply Supp. 9, ECF No. 56. The parties have already agreed to modify the discovery schedule. Order, ECF No. 58. The fact discovery deadline is June 30, 2016. *Id.* The dispositive motion deadline is November 15, 2016. *Id.* The Court finds no prejudice to South Fifth in granting Aspen's leave to amend given that discovery is in its early stages, and the dispositive motion deadline is months away.

The Court finds no undue prejudice in modifying the scheduling order so that Aspen may move for leave to file its proposed counterclaim.

### III.   Leave to amend under Rule 15

Under Rule 15(a)(2), a party may amend a pleading to add an omitted counterclaim only if the Court grants leave to amend or if the opposing party consents. This Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also*, Fed. R. Civ. P. 13 advisory committee's note to 2009 amendment ("An amendment to add a counterclaim will be governed by Rule 15."). Whether to grant leave to amend lies within this Court's discretion. *See Duggins*, 195 F.3d at 833.

#### A.   Futility

The Court may deny leave to amend based on futility. *Foman*, 371 U.S. at 182. "A proposed amendment is futile where it would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. Dec. 4, 2015). The proposed counterclaim "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Id.* (internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

#### B.   Counterclaim's factual allegations

5

At this stage, the Court accepts the proposed counterclaim's well-pleaded factual matter as true. *See Kreipke*, 807 F.3d at 782. South Fifth had Travelers Insurance coverage for the Kentucky Towers and the Mayflower Apartments (another apartment building in downtown Louisville). Proposed Countercl. ¶¶ 1 – 2. On February 14, 2013, Travelers Insurance emailed Aileen M. Neill of Risk Placement Services, South Fifth's "wholesale broker," and said Travelers "will not be offering a renewal of the [South Fifth insurance policy] effective 3/24/13 due to lack of response regarding loss control." *Id.* ¶ 7. On February 22, Neill emailed Greg Portnoy of GLN Worldwide, Inc., "another wholesale insurance broker for South Fifth," and said Travelers would not renew "'due to lack of response regarding loss control.'" *Id.* ¶ 8. On February 25, 2013, Travelers mailed a notice of non-renewal to South Fifth which said that "Travelers was not renewing South Fifth's policy for the reason that South Fifth was 'UNCOOPERATIVE WITH LOSS CONTROL.'" *Id.* ¶ 10.

On March 19, 2013, "South Fifth, via Portnoy," submitted a commercial insurance application to WKF&C, Inc., Aspen's agent. *Id.* ¶ 15. "The policy application asked whether the applicant had any policy or coverage had been declined, cancelled, or non-renewed during the prior three years. South Fifth answered that it had not." *Id.* ¶ 16. In the email application, "Portnoy stated, 'Enclosed is a c omplete [sic] submission on these two fire resistive apartment buildings in Kentucky .. I control with Travelers Excess but they are not offering renew *due to Wind/Hail concerns* ... It makes no sense." *Id.* ¶ 17.

C. Whether granting Aspen leave to amend would be futile

Aspen seeks to allege a cause of action for rescission. *See* Proposed Countercl. 4 – 5. The proposed counterclaim does not cite a statute under either New York[2] or Kentucky law,[3]

---

[2] The New York rescission statute provides,

though it does track the language of Kentucky's rescission statute, Ky. Rev. Stat. § 304.10-110. *Compare* Proposed Countercl. ¶¶ 23 – 24, *with* Ky. Rev. Stat. § 304.10-110 (2) – (3).

Aspen argues that the Court need not decide whether New York or Kentucky law applies at this time because the proposed counterclaim states a claim under either state's laws. Def.'s Reply 4 n.2. South Fifth argues that the proposed counterclaim is futile because it fails to state a claim under Kentucky law. Pl.'s Resp. 13 – 16. Its sur-reply does not address Aspen's claim that the Court need not decide the choice of law issue at this time, but assumes that Kentucky's rescission statute governs. *See* Pl.'s Sur-Reply 1, ECF No. 59-1.

The Court agrees with Aspen that it need not decide whether Kentucky law or New York law applies at this time because the proposed counterclaim states a claim under either state's rescission statute.

Here, the proposed counterclaim alleges sufficient facts to suggest that South Fifth may be liable for misrepresentation under either state's rescission statute. In essence, the proposed

---

        (b)(1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.

N.Y. Ins. Law § 3105 (McKinney 2011).

[3] The Kentucky rescission statute provides,
        misrepresentations, omissions, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
        1)     Fraudulent; or
        2)     Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
        3)     The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ky. Rev. Stat. § 304.10-110.

counterclaim alleges that Portnoy knew that Travelers decided not to renew South Fifth's coverage because South Fifth had been "UNCOOPERATIVE WITH LOSS CONTROL." Proposed Countercl. ¶ 10.  Then, the proposed counterclaim alleges that Portnoy applied for coverage on behalf of South Fifth and misrepresented the reason Travelers had denied renewal when he said the decision not to renew was "***due to Wind/Hail concerns***." *Id.* ¶ 17.  These factual allegations, which the Court accepts as true, are sufficient to allege that Portnoy, acting on behalf of South Fifth, misrepresented the reason Travelers declined to renew South Fifth's policy.

Next, the proposed counterclaim alleges that Aspen issued the South Fifth policy because it did not have "the same wind/hail concerns Travelers supposedly had." *Id.* ¶ 18.  This factual allegation, which the Court accepts as true, is sufficient to allege that the reason Travelers declined to renew South Fifth's coverage would have been material to Aspen's decision to accept the risk of insuring South Fifth.  Finally, the proposed counterclaim alleges that

> Aspen would not have issued the policy on Kentucky Towers, or would not have issued it at the same premium rate, or would not have issued it in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if it had known that Travelers did not renew South Fifth's policy covering Kentucky Towers and the Mayflower Apartments due to the fact that South Fifth was uncooperative with Travelers' loss control recommendations.

*Id.* ¶ 20.

South Fifth argues that the proposed counterclaim fails to state a claim for rescission. Pl.'s Resp. 13.  South Fifth argues that GLN is not its agent, and therefore it could not be liable of rescission for Portnoy's alleged misrepresentation. *Id.* at 10.  South Fifth cites the Travelers Insurance website for the proposition that "GLN is an independent agent for Aspen." *Id.*

Regardless of what the Travelers Insurance website says about the relationship between GLN and Aspen, the proposed counterclaim alleges sufficient facts to suggest that GLN, a

8

wholesale broker, was an agent of South Fifth, not Aspen. Generally, under both Kentucky and New York law, a broker is the agent of the insured, not the insurance company. *See Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of America*, 51 F.Supp. 3d 379, 400 (S.D.N.Y. 2014) ("New York law provides that 'an insurance broker is the agent of the insured, not the insurance company."); *see also*, Ky. L. of Damages § 27:8 ("A broker, therefore, acts as an agent of the insured and does not have have authority to bind the insurer."); *cf. J. Inmon Ins. Agency, Inc. v. Ky. Farm Bureau Mut. Ins. Co.*, 549 S.W.2d 516, 518 (Ky. Ct. App. 1977) ("[I]n the absence of statutory authority or some special indicia of authority the assigned risk broker is the agent of the insured and not of the insurer ...").

Here, the proposed counterclaim identifies GLN Worldwide, for whom Greg Portnoy worked, as a "wholesale insurance broker for South Fifth." Proposed Countercl. ¶ 8. This is sufficient to suggest that GLN is South Fifth's agent. Further, the proposed counterclaim alleges that on March 19, 2013, Portnoy submitted South Fifth's policy to WKF&C on South Fifth's behalf. *Id.* ¶ 15. This is sufficient to suggest that GLN acted on South fifth's behalf when it submitted the policy application to Aspen's agent, WKF&C.

South Fifth argues that Aspen cannot rescind because Aspen knew the Travelers policy had not been renewed when it issued the policy. Pl.'s Resp. 11. South Fifth points to the cover of Portnoy's email which specifically states that Travelers was not renewing South Fifth's coverage. *Id.* at 10. However, Aspen's proposed counterclaim alleges that "if it had known that Travelers did not renew South Fifth's policy covering Kentucky Towers and the Mayflower Apartments due to the fact that South Fifth was uncooperative with Travelers' loss control recommendations," Proposed Countercl. ¶ 20, it would not have issued the policy it did. *Id.*

Additionally, South Fifth argues in its sur-reply that the proposed counterclaim fails to meet the heightened pleading standards of Rule 9(b). Pl.'s Sur-Reply 8.[4] The court of appeals has said that it is improper to raise an issue for the first time in a reply as it prevents the nonmoving party from having a fair opportunity to respond. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

Even if South Fifth properly raised the Rule 9 issue, the proposed counterclaim is sufficient to meet Rule 9's heightened pleading requirements.

> Generally, a pleading satisfies Rule 9(b)'s heightened pleading standards
>
> if it alleges 'the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud,' and enables defendants to 'prepare an informed pleading responsive to the specific allegations of fraud.

*U.S. ex rel. Bledsoe v. Cmty. Health Sys. Inc.*, 501 F.3d 493, 509 (6th Cir. 2007).

Here, the proposed counterclaim alleges that on March 19, 2013, when he submitted South Fifth's policy application, GLN's Portnoy knew that Travelers Insurance declined to renew South Fifth's coverage because South Fifth was "UNCOOPERATIVE WITH LOSS CONTROL," Proposed Countercl. ¶ 8, but when he submitted South Fifth's insurance policy

---

[4] Just last week, Aspen filed a response in opposition to South Fifth's motion for leave to file a sur-reply. Resp. Opp. 1, ECF No. 61. Aspen argued that South Fifth's sur-reply improperly raised new arguments in could have made in its response brief, or South Fifth reiterated arguments it had already made in the response brief. *Id.* Together, Aspen and South Fifth have filed five briefs totaling fifty-six pages on a routine, non-dispositive matter of civil procedure.

On December 1, 2015, new amendments to the Rules of Civil Procedure went into effect. The Federal Rules "should be construed, administered, *and employed by the court and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). As Chief Justice John Roberts reminds us, "The new passage highlights the point that lawyers—although representing adverse parties— have an affirmative duty to work together, and with the court, to achieve prompt and efficient resolutions of disputes." 2015 Year-End Report on the Fed. Judiciary 6, www.supremecourt.gov/.../**year-end**/**2015year**-**endreport**.pdf.

Going forward, all parties involved should consider whether such extensive briefing is a necessary component of zealous advocacy.

10

application, he said that Travelers Insurance was not renewing South Fifth's coverage "due to Wind/Hail concerns." Proposed Countercl. ¶ 17. This factual allegation suffices to meet Rule 9(b)'s heightened pleading standard as it enables South Fifth to prepare an informed pleading responsive to the specific allegation. *See Bledsoe*, 501 F.3d at 509.

The Court finds that the proposed counterclaim is not futile because under either Kentucky or New York law, the proposed counterclaim states a claim to relief for rescission that is plausible on its face.

D. Undue prejudice

The Court incorporates its analysis from Part II(C). The Court finds no undue prejudice to South Fifth that would require the Court to deny Aspen leave to amend. As the proposed counterclaim is not futile and would not unduly prejudice South Fifth, the Court will grant Aspen leave to file the counterclaim.

IV. Conclusion

The Court will modify the scheduling order and grant Aspen leave to file the counterclaim. The Court will enter a separate order in accordance with this opinion.

January 21, 2016

Charles R. Simpson III, Senior Judge
United States District Court

11