UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SOUTH FIFTH TOWERS, LLC                                                       PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:15-CV-00151-CRS

ASPEN INSURANCE UK, LTD and
TENCO SERVICES, INC.                                                         DEFENDANTS

**MEMORANDUM OPINION**

I.   Introduction

This matter is before the Court on South Fifth Towers, LLC's ("South Fifth") Plaintiff's Objection to Discovery Order of August 11, 2016, ECF No. 90. South Fifth objects to the Magistrate Judge's discovery order that granted in part and denied in part South Fifth's motion to compel production of twenty-seven reports and other documents by claims adjusters and investigators. These reports and documents relate to the scope of alleged storm damage to an apartment building owned by South Fifth. Disc. Order 1, ECF No. 89. South Fifth argues that the Magistrate Judge erred in (1) characterizing a particular letter from South Fifth's counsel as giving Defendants a reasonable anticipation of litigation, (2) concluding that the reports meet the "because of" standard defined in *United States v. Roxworthy*, 457 F.3d 590 (6th Cir. 2006), (3) concluding that South Fifth has no substantial need for the reports, and (4) determining that the reports were made for legal, rather than business, reasons. Pl.'s Obj. 2–4, ECF No. 90. For the reasons that follow, South Fifth's objection will be overruled.

II.     Background

The Court referred this matter to the Magistrate Judge for ruling on all non-dispositive matters, including discovery issues, under 28 U.S.C. § 636(b)(1)(A). Order, ECF No. 8. At issue is the Magistrate Judge's Order of August 11, 2016 in which he denied South Fifth's motion to compel on all but one document and denied South Fifth's motion for a protective order. Disc. Order, ECF No. 89. South Fifth has not objected to the portion of the Magistrate Judge's order denying South Fifth's motion for entry of a protective order.

The Magistrate Judge separated the twenty-seven separate documents into four different categories: (1) the "HAAG Report," consisting of the HAAG estimates (which have already been provided to South Fifth) and the HAAG documents, (2) fourteen "periodic reports" from Mike App to Aspen, (3) six "Tenco Supplemental Reports," and (4) five "Other Documents." Disc. Order 15–27, ECF No. 89. The Magistrate Judge noted that Defendants object to producing these documents on the basis of "attorney-client privilege under Kentucky Rule of Evidence 503 and the work product doctrine as set out in Rule 26(b)(3), as well as the protection afforded to non-testifying, retained experts provided under Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure." *Id.* at 7. The Magistrate Judge also noted that South Fifth's response to such assertions is that they are "wholly without merit" because the documents "were prepared in the ordinary course of business rather than to obtain legal advice" and were "not prepared or obtained 'because of' the prospect of litigation." *Id.* at 4–6. Finally, the Magistrate Judge noted that South Fifth believes that "Defendants have improperly attempted to shield the adjusters and investigators reports from discovery by copying counsel or using counsel as a conduit for the reports." *Id.* at 5. The Magistrate Judge then provided the controlling law and a document-by-document analysis of that law as applied to each disputed document. *Id.* at 7–30.

First, the HAAG Report was generated by HAAG Construction after it was hired by Tenco to conduct on-site investigation of the water damage. *Id.* at 3. The Magistrate Judge concluded that the portion of the HAAG Report that has not yet been provided to South Fifth is protected under the work product doctrine. *Id.* at 16. In making this conclusion, the Magistrate Judge determined that the correspondence to which these documents are attached make clear that the HAAG documents were "written at the request of counsel for his use in the impending litigation." *Id.* The Magistrate Judge saw no indication that the protection of the doctrine had been waived. *Id.* at 16–17. Finally, the Magistrate Judge wrote that "South Fifth has failed to show the type of extraordinary circumstances that would warrant its production notwithstanding the protection" of the doctrine because South Fifth had superior access to the property and had its own consultant to inspect the property. *Id.* at 17.

Second, the Magistrate Judge concluded that the fourteen "periodic reports" from Mike App, First Vice-President of US Adjustment Corp. ("USAC"), Aspen's claims administrator, to Aspen were properly withheld by Aspen. *Id.* at 17–19. Redacted versions of three of these reports (the Third, Sixth, and Seventh Reports) have already been provided to South Fifth. *Id.* at 17. The Magistrate Judge concluded that the redacted portions of these three reports are protected by the attorney-client privilege because "these confidential communications were made for the purpose of facilitating the rendition of legal services [among] the client, Aspen, and its representative, USAC, and Aspen's attorney." *Id.* at 18.

The Magistrate Judge found that the remaining reports (the Eighth through Eighteenth Reports) were also properly withheld. *Id.* at 19. The Magistrate Judge pointed out that the Eighth Report constitutes work product because it "makes direct reference to 'items requested by [Aspen's] newly assigned attorney'" and "includes certain comments of Mike App regarding the

3

requests of Attorney [Stanley] Kallman[, counsel for Aspen,] for specific information related to the building." *Id.* The Magistrate Judge found that the Ninth Report is similarly protected by work product because it "contains the observations of Mike App concerning various potential litigation-related developments that are 'in the process of being reviewed'" by an attorney. *Id.* at 19–20. The Magistrate Judge found that both the Tenth and Eleventh Reports are protected by attorney-client privilege because they contain instructions and recommendations "provided by attorney Kallman concerning litigation-related investigation." *Id.* at 20. The Magistrate Judge found that the Twelfth Report falls within the work product doctrine because it "contains certain observations of Mike App concerning potential deficiencies in the Sworn Statement in Proof of Loss, as well as his suggestion on how to proceed based upon anticipated developments." *Id.* The Magistrate Judge found that the Thirteenth Report contains attorney-client privileged material because it contains attorney Kallman's "analysis of the state of the insured's building at the time of the loss and the implications of this condition on South Fifth's insurance claim." *Id.* at 20–21.

    The Magistrate Judge found that the Fourteenth Report is also protected by the attorney-client privilege because it "makes direct reference to and attaches certain legal correspondence from attorney Kallman to Mike App of USAC." *Id.* at 21. Similarly, the Magistrate Judge found the Fifteenth Report to be privileged because it "makes direct reference to the substance of a 'lengthy discussion' with attorney Kallman and the implications of such discussion." *Id.* The Magistrate Judge found that the Sixteenth Report satisfies the requirements of both attorney-client privilege and the work product doctrine because it not only includes attorney correspondence as an attachment, but also includes references to "the decision-making process of attorney Kallman concerning future interaction with South Fifth's counsel." *Id.* The Magistrate Judge found that the Seventeenth Report is protected by the attorney-client privilege because it

4

contains instructions made by USAC to Kallman regarding the taking of Examinations under Oath ("EUO"). *Id.* at 21–22. Finally, the Magistrate Judge found that the Eighteenth Report is protected by the work product doctrine because in it, "Mike App advises Aspen how the EUO will be conducted based on specific documents." *Id.* at 22.

Third, the Magistrate Judge concluded that five out of the six Tenco Supplemental Reports were properly withheld. *Id.* Tenco was the field adjuster hired by USAC. *Id.* The first of these reports is the September 25, 2013 Supplemental Report, which the Magistrate Judge determined does not qualify for attorney-client privilege, protection under the work product doctrine, or the protection afforded to non-testifying, retained experts provided under Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure. *Id.* at 23–26. Conversely, the Magistrate Judge found the October 24, 2013 and November 26, 2013 Supplemental Reports to be protected under attorney-client privilege because they both contain the substance of communications with Aspen's attorneys. *Id.* at 26–27. The Magistrate Judge found further that the November 26, 2013 Supplemental Report would qualify for protection under the work product doctrine as well as attorney-client privilege because it does not appear to be a routine business document. *Id.* at 27. As to the final three Supplemental Reports (February 5, 2013; March 5, 2013; April 2, 2013), the Magistrate Judge found that they are not relevant because the "entire substance of these three Supplemental Reports is literally that there is nothing to report." *Id.*

Fourth, the Magistrate Judge concluded that all five of the "Other Documents" were properly withheld. *Id.* at 27–29. The Magistrate Judge found that the Confidential Final Report prepared by G4S for Aspen falls within the protection of the work product doctrine because it contains investigative activities requested by counsel and makes reference to communications with Aspen's attorney. *Id.* at 27–28. The Magistrate Judge found that two emails from Robert

5

Klipera are protected under both attorney-client privilege and the work product doctrine because they were transmitted and received by representatives of Aspen and transmitted to Aspen's counsel well after the threat of litigation and they contain a detailed history of the ownership of the building. *Id.* at 28. The Magistrate Judge found that a chain of emails dated October 31, 2013 are protected under attorney-client privilege because they "involve[] an exchange between Aspen's attorney and its representatives . . . concerning certain developments in the investigation." *Id.* at 29. The Magistrate Judge similarly found that two separate email exchanges are also protected under attorney-client privilege because they are also confidential communications between representatives of the client and the client's attorney. *Id.*

Accordingly, the Magistrate Judge granted in part and denied in part South Fifth's motion to compel. Fourteen days later, on August 25, 2016, South Fifth filed the Plaintiff's Objection to Discovery Order of August 11, 2016, ECF No. 90.

    III.    <u>Standard of Review</u>

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(A), which also sets out the applicable standard of review for objections to the ruling of a Magistrate Judge on such assigned matters. The Court may reconsider any pretrial matter "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Federal Rule of Civil Procedure 72(a) has implemented this provision. *Callier v. Gray*, 167 F.3d 977, 980 (6th Cir. 1999). It provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Many decisions in this circuit have discussed the "clearly erroneous" and "contrary to law" standards. The clearly erroneous standard applies to the magistrate judge's factual findings.

*Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995). The court in *Tri-Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles* explained the clearly erroneous standard:

> A judicial finding is deemed to be clearly erroneous when it leaves the reviewing court with "a definite and firm conviction that a mistake has been committed." *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). Under the clearly erroneous standard, a court reviewing a magistrate judge's order should not ask whether the finding is the best or only conclusion that can be drawn from the evidence. Further, this standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge. Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable. *Id.*

75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999). This standard grants "considerable deference to the determinations of the magistrates." *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (citations omitted).

Conversely, the legal conclusions of a magistrate judge are "reviewed under the plenary 'contrary to law' standard." *Haworth, Inc.*, 162 F.R.D. at 291 (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)). The district court "may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent. Thus, this Court must exercise its independent judgment with respect to a Magistrate Judge's legal conclusions." *Gandee*, 785 F. Supp. at 686 (internal citations and quotation marks omitted).

 IV. <u>Discussion</u>

In its objection, South Fifth argues that the Magistrate Judge erred in (1) characterizing a particular letter from South Fifth's counsel as giving Defendants a reasonable anticipation of litigation, (2) concluding that the reports meet the "because of" standard defined in *Roxworthy*, 457 F.3d 590 (6th Cir. 2006), (3) concluding that South Fifth has no substantial need for the

7

reports, and (4) determining that the reports were made for legal, rather than business, reasons. Pl.'s Obj. 2–4, ECF No. 90. The Court will briefly address each in turn.

> A. Whether the Magistrate Judge Erred in Characterizing a Particular Letter from South Fifth's Counsel as Giving Defendants a Reasonable Anticipation of Litigation

First, the Magistrate Judge's characterization of a letter from South Fifth's counsel was neither clearly erroneous nor contrary to law. The letter at issue, sent on November 6, 2013 from counsel for South Fifth to Aspen's attorney, stated that "failure to attend to South Fifth's insurance claim would 'lead to the conclusion that Aspen is in breach of its policy.'" Pl.'s Obj. 1–2, ECF No. 90 (citing Disc. Order 16, ECF No. 89). According to South Fifth, the Magistrate Judge concluded that every report dated after November 6, 2013 is work product because that letter provided a reasonable anticipation of litigation. Pl.'s Obj. 2, ECF No. 90. South Fifth contends that the Magistrate Judge erroneously characterized this letter and that the "defendants have not met their burden of showing that based on the content and timing of this letter, litigation was impending, or more than a theoretical possibility, or that the anticipation of litigation was reasonable." *Id.* In support of this contention, South Fifth cites to its Reply Memorandum, in which it asserts that South Fifth's attorney "entered for the explicit purpose of navigating South Fifth and the public adjuster through Aspen's claims process, and explicitly stated his objective to [sic] obtaining payment for the undisputed portion of the claim." *Id*; Pl.'s Reply 2–3, ECF No. 77.

South Fifth's argument is without merit. First, the Magistrate Judge never decided whether a particular document was work product solely based upon the document being dated after November 6, 2013. In fact, the only time the Magistrate Judge directly relied upon this letter's significance was in finding that the two emails from Robert Klipera were protected by the

work product doctrine, in addition to his separate finding that they were privileged. Disc. Order 28, ECF No. 89.

Second, South Fifth's argument contains no new law or information that the Magistrate Judge did not already consider. As the Magistrate Judge pointed out, the "because of" test in *Roxworthy* contains both an objective and subjective component, requiring the party seeking to avoid disclosure to 1) establish a subjective belief that litigation was a real possibility and 2) demonstrate that such belief was objectively reasonable. 457 F.3d at 594 (citation omitted). Given that "breach of contract" is a common cause of action in insurance disputes, it was reasonable for the Magistrate Judge to find that a letter warning the opposing party that it would be "in breach of its policy" under particular circumstances created both a subjectively and objectively reasonable anticipation of litigation in the Defendants. The Magistrate Judge did not ignore or misapply any applicable law in rejecting South Fifth's arguments, and the Court finds no basis to suggest that the Magistrate Judge's decision was clearly erroneous or contrary to law.

> B. <u>Whether the Magistrate Judge Erred in Concluding that the Reports Meet the "Because of" Standard</u>

Second, the Magistrate Judge's analysis of the work product doctrine and the "because of" standard was neither clearly erroneous nor contrary to law. The "because of" standard asks "whether a document was prepared or obtained *because of* the prospect of litigation." *Roxworthy*, 457 F.3d at 593. South Fifth correctly points out that

> [t]he fact that [the insurer] reasonably anticipated litigation at this point does not answer whether it prepared *the disputed documents* 'because of' litigation or not. Making coverage decisions is part of the ordinary business of insurance and if the 'driving force' behind the preparation of these documents was to assist [the insurer] in deciding coverage, then they are not protected by the work-product doctrine.

9

*In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009). South Fifth contends that Defendants "failed to meet their burden of showing that litigation, rather than a coverage determination, was the driving force behind the preparation" of these reports. Pl.'s Obj. 3, ECF No. 90.

South Fifth's argument is not persuasive. The Magistrate Judge carefully considered the contents of all twenty-seven documents in determining that nine of them were protected by the work product doctrine. The Magistrate Judge considered the case law stating that documents prepared in the ordinary course of business or to meet public requirements unrelated to litigation are not protected by the work product doctrine. Disc. Order 11, ECF No. 89 (citing *Roxworthy*, 457 F.3d at 593.). Yet, there is evidence to support the Magistrate Judge's reasonable finding that these nine documents are protected. As illustrated above in Section II, in making his conclusions, the Magistrate Judge cited or described specific language in each document indicating that the document was created not just in the face of impending litigation, but *because of* litigation. In some cases, the Magistrate Judge pointed out that the document contains items requested by the attorney for use in the impending litigation. *See* Disc. Order 16, 19, 27–28, ECF No. 89. In other cases, the Magistrate Judge found that the document contains observations or decisions made for litigation. *See id.* at 19–21. The Magistrate Judge did not ignore or contradict the law surrounding the work product doctrine when he found that each document met the requirements. Moreover, South Fifth has presented no additional legal basis to support compelling production of these documents. The Court finds no basis to suggest that the Magistrate Judge's decision was clearly erroneous or contrary to law.

C. <u>Whether the Magistrate Judge Erred in Concluding that South Fifth has no Substantial Need for the Reports</u>

10

Third, the Magistrate Judge's analysis of whether South Fifth showed substantial need for the reports was neither clearly erroneous nor contrary to law. South Fifth contends that "the Magistrate Judge's conclusion that South Fifth has no substantial need for the HAAG report and other documents is clearly erroneous." Pl.'s Obj. 3, ECF No. 90. In support, South Fifth cites to its memorandum in support of its motion to compel, in which it stated that "the documents may nevertheless be discoverable if the opposing party has substantial need of the materials and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id*; Pl.'s Mem. Support Mot. Compel 11, ECF No. 68-1 (internal citations and quotation marks omitted). These arguments appear to be the exact same arguments previously considered and rejected by the Magistrate Judge. As the Magistrate Judge pointed out, "South Fifth had equal, indeed superior, access to the property" and "had its own consultant on the premises to inspect the property and the results of the water damage so that it stands on equal footing with Aspen in this regard." Disc. Order 17, ECF No. 89. The Magistrate Judge did not ignore or misapply the law in rejecting South Fifth's arguments, and the Court finds no basis to suggest that the Magistrate Judge's decision was clearly erroneous or contrary to law.

    D.  <u>Whether the Magistrate Judge Erred in Determining that the Reports were Made for Legal, Rather than Business, Reasons</u>

Fourth, the Magistrate Judge's analysis of the attorney-client privilege and whether the reports were made for legal or business reasons was neither clearly erroneous nor contrary to law. South Fifth contends that Defendants failed to meet their burden of showing that the reports were made primarily for legal reasons. Pl.'s Obj. 4, ECF No. 90. They argue, "[j]ust because legal considerations may have been involved, the [reports] were communications made for

11

business reasons, not legal reasons, for purpose of determining coverage. . . . [T]he disputed documents do not acquire privilege status by being copied or sent to counsel." *Id.*

South Fifth's argument is unavailing. The Magistrate Judge carefully considered the contents of all twenty-seven documents in determining that sixteen of them were protected by the attorney-client privilege. Review of those sixteen documents reveals evidence to support the Magistrate Judge's reasonable finding that they are privileged. The Magistrate Judge considered South Fifth's concerns when he made his decisions, pointing out that "[m]ere business advice or business documents that happen to be given to or sent by an attorney are not automatically recipients" of the privilege. Disc. Order 9, ECF No. 89 (citing *Lexington Public Library v. Clark*, 90 S.W.3d 53, 60 (Ky. 2002)). Each time the Magistrate Judge found a document to be privileged, he cited or described language in the document indicating that it contained confidential communications with Aspen's attorney regarding the impending litigation. In fact, the Magistrate Judge found that the September 25, 2013 Tenco Supplemental Report was not privileged, despite the fact that it had been sent to counsel, showing that the Magistrate Judge was not making his conclusions based solely upon whether it was forwarded to counsel. Disc. Order 24, ECF No. 89. The Magistrate Judge did not ignore or misapply any applicable law. Moreover, South Fifth has presented no additional legal basis to support compelling production of these documents. The Court finds no basis to suggest that the Magistrate Judge's decision was clearly erroneous or contrary to law.

V.  Conclusion

Therefore, having considered the Magistrate Judge's order and South Fifth's objection, the Court will overrule South Fifth's Plaintiff's Objection to Discovery Order of August 11, 2016.

The Court will enter an order in accordance with this opinion.

November 4, 2016

Charles R. Simpson III, Senior Judge
United States District Court